All right. Is the appellant ready to proceed? Yes, Your Honor. Appellant, are you ready to proceed? Yes, Your Honor. All right. Mr. Is it Darius? Darius, Your Honor. Darius. Mr. Darius, you may proceed. Good afternoon and may it please the court. I'm Garrett Darius, Counsel for Appellant Plaintiff, Ms. Rosie Phillips. Ms. Phillips' claim for damages under Title II of the Americans with Disabilities Act and the Rehabilitation Act was dismissed at the pleading stage when the district court determined that Ms. Phillips' complaint failed to contain sufficient allegations of intentional discrimination. The district court's ruling was erroneous in two regards. First, the district court utilized the wrong standard of intentional discrimination. Second, the district court failed to look at the entire factual narrative in contravening to the Supreme Court's recommendations in Twombly and Iqbal. Jumping right into the first issue, the district court utilized the wrong standard of intentional discrimination. Over a period of approximately 18 years, this court has explained what intentional discrimination constitutes in a series of rulings, which most recently was explained in Smith v. Harris County in April of 2020 that intentional discrimination, quote, requires at least actual knowledge that an accommodation is necessary. Now, I want to jump in and look at some of those cases. But before that, I think it's important actually that we step back for just a moment and evaluate how disability discrimination actually differs substantially from conventional discrimination. In most conventional discrimination cases, the discrimination and the prohibited conduct is considered somewhat of a floor. You know, there's a type of conduct that is prohibited. So take race-based discrimination. There would be a type of conduct that is prohibited, discriminating based on race. And so if someone commits an act, say, saying, you know, no blacks allowed in our store, that would be a type of prohibited conduct. In contrast, the ADA and the Rehabilitation Act, as explained in Tennessee v. Lane from the Supreme Court, actually imposes an affirmative obligation to accommodate. That is, individuals are entitled to reasonable accommodations. So unlike conventional statutes that just have a prohibition on certain conduct, the ADA and RA actually require affirmative action. And so when we're evaluating what constitutes intentional discrimination, we must evaluate the ADA within its unique statutory scheme crafted by Congress. So if we rewind 18 years to the Delano Pyle case of 2002, we can see that what was at issue before the Fifth Circuit in that case was actually very similar to the case that brings us here today. And in that case, the defendant who lost at trial argued that the plaintiff should have proved deliberate indifference. And the Fifth Circuit unequivocally held that there is no deliberate indifference standard applicable to the ADA and RA, that no policy required to be proven, no policymaker must be proven, and that respondeat superior is, you know, you can't hold an entity liable for what their deputies do, right? And so that was in 2002. And notably in that case, the Fifth Circuit sustained the finding of discrimination by the jury, where even though the plaintiff never actually requested an accommodation, what the he was deaf, and he didn't get an accommodation while interacting with a sheriff deputy, both in the field and later at a police station. And the jury found that that was discrimination. And the Fifth Circuit noted that the deputy made no attempts to accommodate through other means. So if we then fast forward 18 years, or sorry, 16 years to the Miraglia case in 2018, in that case, the intentional discrimination was required. And the Fifth Circuit said, yes, intentional discrimination is required. And it said that means actual notice, right? It's an actual notice of a potential violation. Now, in some dicta, and essentially what amounted to nothing more than a passing comment, the court said, we seem to have required more than deliberate indifference. But notably, the district, the Fifth Circuit was not holding that deliberate indifference was a standard. This was more just like a passing comment that that was part of the, the, you know, discussion that occurred before that panel, something that we were discussing at that time. And, um, you know, but at no point did the the panel of the Miraglia case discuss what deliberate indifference constitutes, you know, didn't discuss that it had been rejected and Delano Pyle, nothing like that. It was essentially, like I said, a passing comment. Unfortunately, in the case that brings us here today, the district court relied upon this passing comment and some out of circuit precedent to hold Miss Rosie Phillips to what it deemed and called a heightened standard of deliberate indifference. Using and holding that standard that the district court crafted was error. Instead, what the district court should have done is it should have held Miss Rosie Phillips to the standard that this court has developed over a series of cases, which most recently explained Harris County, that is actual knowledge that an accommodation is necessary. So what are your allegations that support actual knowledge? If you get to the complaint, which it's rule 12, that's what that's what matters. Sure. When we look at the totality that all of this occurred outside of a special education classroom, it's alleged that various reasonable accommodations were available. Many of these reasonable accommodations are things that are not complicated or nuances. As the Pele has alleged in their brief, we're talking things like talking in a low, calm, low tone of voice. We're talking about getting someone knowledgeable to the scene, things that are going to be open and obvious to anyone. We're talking that it was alleged that J. H. Was exhibiting obvious manifestations of his disability that Deputy Nenner used ineffective verbal commands. Just same thing in Delano Pyle. Did the defendant have to know he was autistic or just that he had a disability? So I don't think any court has examined what level of granular detail that someone has to know about what is the type of disability versus, as in the Smith versus Harris case, it was just said at least that an accommodation is necessary. So not saying that the accommodation or the very specific accommodation, just that an accommodation would probably be Deputy Nennery knew about this individual's disability or that there were disabled students at the school that he was in charge of or policing. I think under what's been developed, we have to show that that there are, we have to allege facts that suggest that Deputy Nennery understood that this individual had a disability and likely needed an accommodation. Right? I don't know that we need to. I do not believe that we have. There were other students there that had varying degrees of learning disabilities or any other types of disabilities, maybe even some students there that wouldn't qualify as having any disabilities. So wouldn't you have to allege that the deputy was aware that this particular individual had certain needs arising out of a disability that would need accommodation? And I believe that we have satisfied that, Your Honor, because when the facts are taken in their totality, here we have, this is an individual running in and out of a classroom. We allege that he was exhibiting obvious manifestations of his disability, and that's the allegation that's in the complaint. So maybe it turns out not to be accurate on the summary judgment stage, but it's obvious manifestations of his disability. Prior to that, prior to that, isn't the claim that the deputy was chargeable with knowledge of the disability before he shows up and acts as is depicted on the videotape, or as alleged, whether there's any overlap between the two. Um, so I'm not following fully, but I think you're saying that the deputy should have taken acts that would constitute an accommodation upon arriving at the scene and seeing the young man distressed and doing all of the things that you describe in the complaint that would exhibit autism. Is that the moment that you claim the deputy was aware of the disability or would the deputy be chargeable with knowing about the disability of this student prior to arriving? As I understand it, he was assigned to this school, wasn't he? He was, yes, your honor. Okay, so is the knowledge that he has about the disability a general knowledge that the student body has autistic students in it that need to be handled a certain way? Or wouldn't you have to allege that the deputy was aware that this particular student needed to be treated a certain way because of the particularities of his disability? So, um, there's no allegations that Deputy Nunnery knew of J. H. Prior to the moment of his arrival on the scene. But the allegation is that upon his arrival within that time frame, Deputy Nunnery, you know, would have been come aware because of what transpired. You know, again, it's not over a lengthy period of time, and we're talking maybe 10-15 minutes here. But some things are open and obvious very, very quickly. I mean, we're talking about an individual here who is extreme. This is not a borderline case. You know, this is someone who is completely nonverbal, someone who is, you know, exhibiting extreme manifestations of a disability. So, um, you know, there's no set in any sort of case law saying that, well, someone has to have at least 30 minutes to become aware. You know, Deputy Nunnery can become aware within a period of minutes. I mean, we had a case where this specific case where he was around J. H. In a semi circle for approximately five minutes. I mean, in semi circle around a disabled child for five minutes is much more than sufficient time to understand that this is a disabled individual. They likely need an accommodation, and I need to do something to accommodate that individual. And there were several other people there yesterday. You know whether or not anyone else said he's autistic. I don't. We don't know that at this stage. You know, it's still at the pleading stage. No discovery has occurred in this case. Um, you know, so we're really limited on the facts that are available. You know, they've been put forth in the in the complaint as they are available. How should Deputy Nunnery have responded in this situation? What would have been an appropriate accommodation? It's our position. An appropriate accommodation would have been breaking up that semi circle using a low voice and if and, you know, kind of working through to to kind of calm down the situation. And if those still don't work, you can get someone more familiar with with, uh, with a disabled minor and with working with autistic individuals instead of immediately resorting to, you know, forming this large circle treating J. H. As if he's a threat, as if he's some sort of criminal and with his hand on the taser at the ready, ready to go immediately upon his arrival at the scene. You know, I mean, we're talking just said, though, what you just said about getting someone there who's more familiar with the individual to go back to what Judge Graves, what I understood him to ask you is that the people who were in the semi circle, uh, were people who were familiar. I was. It was. It was an assistant principal or teacher or counselor or someone of that sort. Is that correct? Or are these people who just happened to be in the school at the time? I'm not. We're not fully aware of what the signed roles of these individuals are again, because we're still at the discovery stage. We're not even at the discovery stage is at the pleading stage. Um, you know, schools, as I understand it, at least have individuals who were like somewhat like security, but they're not exactly. Um, you know, they're not exactly official police officers or sheriff deputies. So I don't we don't know that these individuals had any relationship with with J. H. At all. At this point in time, you know, procedural question. You made reference in the complaint to the videotape several times, and I noticed you don't argue. I don't want to make an issue if it's not an issue, but you don't believe that it's inappropriate for the district judge to have looked at the videotape as part of the motion. Is that correct? Isn't it like incorporating a document that's attached? That's correct. And the reason one of the main reasons we say that is that the if you notice, the district court said that he watched the video and then but he still relies upon the allegations, and that's because the video tracks the allegations. So, you know, it would be one thing if if the district court determined that, you know, a completely different version of the facts and or set out the video. But but I think that there's overlap there. So I don't think we don't have a problem with the district court having viewed the video since they track what's in the in the Um, you know, so essentially what we're saying is that, uh, that the district court should not have used this heightened standard of deliberate indifference, but instead should have used what was in the Smith versus Harris case. Um, and using this heightened standard of deliberate indifference. What are you saying? What are you saying? What standards should the court have? We would. We suggest that this court should use what was in Smith versus Harris County. That tell me what that is. At least actual knowledge that an accommodation is necessary, at least actually the same as deliberate indifference. No, and deliberate indifference is the standard. Originally, it's from 1983, and some other courts have have engrafted it onto the A. D. A. Um, largely in some cases with very little analysis. But the Fifth Circuit has already said it's not a standard. Deliberate indifference is not a thing. Um, this court has essentially charted its own path, uh, and and said, you know, there is no deliberate indifference standard. Um, so we're saying we're not saying what we want to hire or a lower standard of deliberate indifference. We're saying deliberate indifference is there is has no applicability to this case at all. It's such a small knowledge. What else did you think? Actual knowledge that an accommodation was necessary. All right, and that's the standard that that we're suggesting should be used. And the last point to be brief is the Twombly and Iqbal issue. If we if you look at the the district court's ruling, it seems like the district court relied very heavily on the allegations on page 17 that contain the words discrimination. However, what the district court should have done is looked at the overall factual narrative, not just the summary allegations at the end that summarized everything that preceded it. And so when you take these two errors together, they had a compounding effect and led to the dismissal of Miss Phillips's claim. Thank you very much. A reserve time for rebuttal. All right, Mr Berg. Uh, thank you, Edwin Bird on behalf of Sheriff Prater. I'd like to start first with this deliberate indifference versus intense standard. I think this court is in municipal liability settings, so that's a term that's familiar. And we all know that deliberate indifference is something less than intent. You don't have proof intent in order to establish about a monel violation, but it's it's something less. It's deliberate indifference. It's you knew what the potential consequences were. You ignored them almost to the point that it could be characterized as intent. That's and so this semantics about this is what's a little bit confusing. So in court, say no, we don't require deliberate indifference. We acquire require actual knowledge. Well, that's a higher standard than deliberate indifference. It's more. Um, and so that's in part of the issue that this court, I guess, needs to clarify for us. I mean, each of the cases that have dealt with it have all recognized that it's more than deliberate indifference. But typically, they'll go ahead and say, just like this court did below, even if it was deliberate indifference, it wasn't shown here. It's a bird. I mean, you're right. Intentionality is usually considered higher than deliberate indifference. But it seems like what the district court here did was it applied deliberate indifference the way it often arises in 1983, which is you're trying to go after not the person who was at the scene, but the head sheriff, the supervisor. And you can either do that through a policy or you say, Well, there's a failure to train failure to supervise. And some of the district court opinion does look like the focus was on, you know, should there have been training this and that, as opposed to just did did your client, the deputy discriminate, which is under the A. D. A. That's there be there be automatic liability, um, to the public entity for its employees conduct. So you want to want to address that that it had the labor of looking at, like a failure to supervise or train type claim. Well, the allegations mostly address the sheriff's policy. The sheriff did not have a policy on autism. The sheriff did not have a written policy on autism. It didn't train anybody about autism, and they even used the word deliberate indifference. And with respect to the deputy, the only reference to the accommodations the manner of speaking. Don't do a semi circle. Uh, uh, there was another few phrases that I wasn't familiar with either, but and that he did so purposefully. That was really the only reference to the to the intent of the deputy. So I think that's what I'm getting at. Isn't that a problem? Don't you agree that if the deputy I know you don't agree with the on the basis of a disability, unlike 1983 under the A. D. A. The sheriff's office itself is then liable. It has vicarious liability. Yes, sir. I agree. And I think that the court's language I don't think that's what they were addressing that that it had to be a final policymaker. But they were responding to the allegations in the complaint that accused the sheriff's office of not having adequate policies. And so I think the court did say to the extent he's trying to say that the sheriff's office was deliberately indifferent. These types of conclusory pleadings about policies or what we see in these Monell clients and the same concept would apply. It's just how do you plead deliberate indifference against an entity is what he was addressed. And that's a separate issue than how you plead intent against an individual like deputy nunnery. And so then he addressed the deputy nunnery, uh, allegations regarding intent. And I think there are plenty of ways to plead intent, uh, that that where the facts fit. And that's the difference here. They don't. Every one of these cases we keep talking about the cadena case, the Smith case, the Perez case, the Miraglia case. Each of those were pretty straightforward. It wasn't any kind of guessing as to what kind of accommodation was needed. Yes, he's he can't walk and we declined to give him a wheelchair. Well, of course, the person who did that, that is actual knowledge. That is intent. That's more than deliberate indifference. I know you're deaf. I know that you can understand me, but I'm going to go ahead and proceed without trying to get you something else. That is easy to say. Yes, you've adequately fled intent when you plead that that happens because it here you haven't. He hasn't pled intent as to the sheriff using these Monell style allegations, and he hasn't pled intent under these this standard with respect to the deputy. The deputy was unaware of autism, uh, accommodations. He wasn't provided any training about accommodations. Had he been trained, there were these different things that he would have known to do that he could have de escalated this to the point it didn't require for. So I think that's another point that's important, Judge, is that the way it's pled is accommodating would have prevented the individual from acting out towards these individuals and the force would respond to. So the open and obvious, like every other case that's dealt with this, it's pretty subtle. It's voice commands. No semi circle. And you can see from the video they're standing back from the individual. Perhaps there is some training that you need to be further back. Um, distance, redirect and reinforce training wasn't provided that that would have worked, supposedly, whatever that is. So I think this is a different case than every other case we've seen dealing with intent under this statute because it's subtle accommodations. There's no way to allege that, uh, this is obvious accommodating. There's no way to allege that what's on the video is something different than it is. So it's a unique setting where we have video of what occurred doesn't entirely cover it, but obviously it's supplemented with the complaint, and there's no pleading of intent using non conclusory allegations as to either the sheriff or this step. Um, so I think that there's with respect to whether there's a deliberate and different standard here or not, I can address that, too. They don't allege that the deputy had knowledge of these accommodations that were available and declined to use that. What we do know is that when this individual acted towards these other people, he responded and that prior to that he had not done these techniques that allegedly would have, uh, de escalated this incident to where that wouldn't have been necessary. So I don't think there's adequate pleading of either intent in the in the sense that it's actual knowledge of the disability, actual knowledge of what it would take to address the disability to where we can say, based on the facts as fled that someone knew this is what would result had they not taken that action. That's intent. And these cases are rare. The only ones we're seeing are the ones where it's obvious it's a wheelchair. It's deafness. It's, uh, the ones that are on. I think this clearly fits within that that makes it unique at the pleading stage is the presence of the video and the way that it's flat. What do you say? It's not actual knowledge. Go ahead. Go ahead. I was gonna ask. What is it at the pleading stage? Can you point to particular paragraphs in the complaint that would support your urging of the exigent circumstances exception? I think you have something about that in the briefing, but that would seem to be more in the nature of an affirmative defense or perhaps even grounds for a summary judgment. But we're still at the Rule 12 state. Well, I think you go back to the Haynes case. It was, uh, that wasn't as an type of a provision in the A. D. A. But it really was a recognition of pretty common sense that that you can't put that law into a setting where it doesn't fit. And that was perhaps an extreme. But the teaching from that is the same. Now, the complaints we would not have asserted that below had the complaint than the only pleading available. But they referenced the the court is allowed to look at, and the only reference to what occurred with respect to the individual was that he went down the hallway, I think, is what the complaint said. Um, no detail at all about what immediate thing happened that led to the deployment there. But you have the video. It's not much coverage that 10 10 40 to 1600. Everybody's standing back because the guy's not doing anything threatening to anyone. And then, for a short period, he is. And the deputy responded at that point. He was. They called him as a law enforcement officer, as was alleged. So the complaint itself doesn't get us there. You're right, Judge. But what does get us there is the documentation that you can't mischaracterize that. And I think as a matter of law, you can say that that's potentially a serious incident. It's a situation that without dispute, you could say that is a real danger, and that's what the response should have been. So we think that's an alternative position to these other pleading problems. But if you get to look at the video and everybody agrees you do, then the video captures that fact that can't be disputed. You can't. You don't need a summary judgment to to get to that. So just real quickly, I the intentional act standard should apply. Council. Can I am Mr. Judge Englehart asked about this exigency defense is a pleading whether that could be a pleading issue. I want to ask on the the issue of whether it's obvious or not, whether it was obvious that he needed an accommodation. What cases do you have that made that type of ruling in favor of a defendant at the Rule 12 stage? Because like Miraglia, for example, you rely on. That was after a bench trial, and our court said, Oh, there actually wasn't enough evidence for intentional discrimination with a full evidentiary record. You know, similar to summary judgment. What What's in a Rule 12 case that said it wasn't sufficiently pled that that the company for the accommodation was obvious? I have not a familiar with one that one of them was a 12 B or in the alternative summary judgment, and they dealt with it as a summary judgment. I haven't seen a 12 C one that I've located on this issue. There's only half a dozen of these things that I've Um, and if we didn't have such clear pleading and clear, uh, recording of this, then it would have been more difficult, obviously. Um, but I think that there are some words that have to be used to prove to adequately state a claim for deliberate indifference. You've probably seen it in the in the law enforcement setting, uh, dealing with Monell issues. But the same pleading requirements should apply. You have to be able to allege facts that would support a finding non conclusory allegation of intent and of, uh, if not an intentional act setting, uh, deliberate indifference. So those are the cases that you would probably go to, which would be a lot more common. 12 B cases would be involving the knowledge component of the Monette. I hope that that address that I'm not entirely clear. But, uh, if you have any other questions, I'd be glad toe to answer them. I think that I think that covers the points that I was that I think are important, and that is that actual knowledge. You've got to have something that alleges knowledge of it can't be something that's specialized that you can't allege that this individual uh, didn't know this because he didn't receive the training. That's not gonna get you there. So for both deputy nunnery and for the sheriff's office, there's just not the words needed to plead that have not been used. And it's because this case doesn't fit like all these other cases. Thank you. Roboto. Uh, yes, Your Honor. Um, I want to start with one thing that it came up briefly once and that I want to bring up before, which is that of it's alleged in the complaint. Also, that of purposeful action. Council just mentioned it a moment ago. But I think that that's also an important consideration because, uh, you know, there's a big distinction in the case law between actions where the individuals know what they're doing versus in Kadena from, uh, an 88 case from January of 2020 where the failure to accommodate was a result of staff confusion. The Fifth Circuit said that is not intentional discrimination, right? But here it's not alleged that there's any sort of confusion. It's not alleged in the complaint that this was a result of negligence or a mistake. Um, this is alleged that deputy nunnery, you know, he immediately had his hand hand on his taser was purposeful action. You know, again, whether that will turn to to be true or not, once we actually have discovery and depositions, I think Judge Costa raised a good point, which is that there really are no cases where questions about whether it's open and obvious have been decided at the Rule 12 stage before any discoveries occurred before there's any sort of factual record. Um, to my knowledge, the only case that has been decided in at the Rule 12 stage in this I think it's a Sheikha versus Texas A. N. M. That's 739 F. Uh, 215 is an unpublished case from 2018 where the Fifth Circuit reversed a dismissal at the pleading stage. And that was a very different sort of case. But it's also under the 88 race. Medical student was dismissed where he, you know, sought reinstatement. I believe it was. But again, you know, trying to conduct a fact intensive inquiry at the pleading stage, it's really difficult. And I think if we look at the case of Perez 2015 unpublished case on the 88, the Fifth Circuit said that intent is a fact intensive inquiry ill suited for resolution at the summary judgment stage. All right, if intent is ill suited for resolution at the summary judgment stage, surely it's gonna be ill suited for resolution at the pleading stage before any discovery has occurred. And when you know the question of whether it's open or obvious or not, um, you know, hasn't hasn't come to light. I mean, this is gonna inherently be fact dependent. And so, um, what we would suggest is that there are sufficient allegations to suggest because again, remember, it's not plaintiff's burden at the pleading stage to prove her claims. It's just to put forth enough facts to jest that plaintiff is going to state a claim and may be able to prevail. So again, maybe this doesn't proceed further than the summary judgment stage. But at this time, we would state that there is enough to suggest that deputy nunnery committed intentional discrimination. And on the Haynes issue, I'd like to brief that very briefly. Um, if you look at the South Lake case there, this this court said that, uh, you can only the Haynes exception only applies when there is a threat to life. You know, it's a threat of bodily harm to someone's life. There's no allegations. This is a deputy. Um, J. H. Was a threat to anyone's life. Um, he was an unarmed minor in a running in and out of a classroom. Um, and second, even in the South Lake case, this court questioned the viability of the Haynes exception in the first place, given that it's an unwritten exception that was kind of just, you know, you know, it doesn't have statutory text. So in the South Lake case, uh, this court said that if the Haynes exception even has any validity, it should be read narrowly. We suggest again, it should be read narrowly and and would not be applicable to dismiss this case. For the reasons discussed, we'd urge this court to reverse the district court and reinstate this case for further proceeding. All right, Mr Bird. Mr DeRose, thank you very much. The court will take this matter under advisement and you two are free to go. Thank you very much. Thank you.